**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorie Grabham,<br><br>    Plaintiff,<br><br>v.<br><br>American Airlines Incorporated,<br><br>    Defendant. | No. CV-17-03741-PHX-DWL<br><br>**ORDER** |

This lawsuit was filed in October 2017. (Doc. 1.) Initially, Plaintiff—an Arizona resident—asserted only individual federal and state-law claims against her employer, American Airlines, Inc. ("American"), for gender-based wage discrimination. However, in September 2018, Plaintiff filed an amended complaint in which she dropped her state-law claim and asserted federal claims on behalf of a nationwide class of over 8,000 current and former American employees. (Doc. 32.) Less than two weeks later, American filed a motion to transfer this case to the Northern District of Texas. The motion is now fully briefed (*see* Docs. 34, 37, 38) and neither party has requested oral argument.

The motion to transfer will be granted. As an initial matter, the Court notes that this case shares more than a few similarities with *Aircraft Mechs. Fraternal Ass'n v. Sw. Airlines Co.*, 2017 WL 1384296 (D. Ariz. 2017), and *Hoefert v. Am. Airlines, Inc.*, 2018 WL 2740276 (D. Ariz. 2018). In *Aircraft Mechanics*, the plaintiffs alleged that Southwest Airlines violated federal law when attempting to amend its collective bargaining agreement with a mechanics' union. 2017 WL 1384296 at *1. Even though 291 of the union members

and one of the key union negotiators resided in Arizona, and even though "[a] plaintiff's choice of forum is generally given great deference," the district court concluded the lawsuit should be transferred to the Northern District of Texas (where Southwest was headquartered) because most of the negotiating sessions occurred there, most of the key witnesses resided there, and more union members resided there than in Arizona. *Id.* at \*1-2. Similarly, in *Hoefert*, the plaintiff brought a class action on behalf of all current and former American pilots who had taken military leave within a specified period. 2018 WL 2740276 at \*1. Even though the plaintiff claimed to reside in Arizona and American conducted business in Arizona, the court concluded the lawsuit should be transferred to the Northern District of Texas (where American was headquartered) because "the overwhelming majority of the parties and witnesses to this matter are located in Texas or east of Texas." *Id.* at \*2.

With those decisions in mind, the Court will address the relevant statutes and factors. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." *Id.* "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations omitted). "In making this determination, the district court may consider a variety of factors, including: the convenience of the parties, the relative financial burdens, the convenience of witnesses, the availability of compulsory process to compel unwilling witness attendance, the availability of witnesses and their live testimony at trial, the ease of access to sources of proof, the differences in the costs of litigation in the two forums, contacts with the chosen forum, jurisdiction over the parties, the state most familiar with the governing law, the relevant public policy of the forum state, the existence of any forum selection clause, and the relative docket congestion of the court." *Aircraft Mechanics*, 2017 WL 1384296 at \*2.[1]

---

[1] The Ninth Circuit has further specified that "section 1404(a) requires two findings—that the district court is one where the action might have been brought and that the

As discussed below, the Court concludes that American has met its burden of demonstrating that a transfer is appropriate and in the interest of justice.[2]

1. <u>Location of Relevant Events</u>: Although both parties urge the Court to consider "where the relevant events happened" as part of the transfer calculus, they disagree as to how this factor should be applied. American contends the "relevant events here are American's internal system of compensating employees" and that these decisions primarily took place in Texas. (Doc. 34 at 12.) Plaintiff contends the relevant events were "the delivery of discriminatory paychecks, not . . . where the policies and practices that are being challenged were developed." (Doc. 37 at 6-7.) Plaintiff also notes that, during a portion of the proposed class period, American's predecessor-in-interest (US Airways) was based in Arizona. (*Id.*)

This factor cuts in favor of a transfer to Texas. Although Plaintiff may be correct that the delivery of a discriminatory paycheck in a particular forum is enough to create venue within that forum, the issue here is different—the court must assess where the relevant liability-generating conduct occurred. *Jones*, 211 F.3d at 498. In this case, that location is primarily Texas.

2. <u>Convenience of Parties</u>: American is headquartered in Texas. In addition, American has submitted evidence in support of its motion showing that "about 80% of the 8,377 potential class members—6,720—reside closer to Texas than Arizona" and that "while over half of the potential class members—4,591—reside in Texas, only 1,364 reside in Arizona." (Doc. 34 at 5.) These figures suggest Texas would be a much more convenient forum than Arizona from American's perspective.

Plaintiff, in contrast, resides in Arizona, so transferring the case to Texas will inconvenience her and her California-based attorney, who may need to associate with local

---

convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (internal quotations omitted). Here, Plaintiff doesn't dispute that the first § 1404(a) factor (*i.e.,* whether this lawsuit could have been brought in the Northern District of Texas) is satisfied.

[2] The Court has not addressed every potential factor identified in *Jones* and its progeny. Instead, it has limited its analysis to the factors deemed relevant by the parties.

counsel to comply with the Northern District of Texas's local rules. (Doc. 37 at 9-10.) However, because this case is a nationwide class action, Plaintiff's initial choice to file suit in Arizona is entitled to less deference than usual. *Bratton v. Schering-Plough Corp.*, 2007 WL 2023482, *4 (D. Ariz. 2007) ("Although the Brattons have chosen their home forum, this is only one factor to be considered and is not dispositive. A plaintiff's choice of forum is entitled to less weight in evaluating venue transfer factors when the plaintiff represents a nationwide class . . . .").

Plaintiff also argues that Arizona wouldn't be a particularly inconvenient forum for American because it "has multiple commercial offices in the Phoenix-area, and Phoenix Sky Harbor Airport is Defendant's sixth-largest hub." (Doc. 37 at 11.) This argument is unavailing. Many companies, including airlines, have operations in an array of different cities. That doesn't mean that each such city would be an equally convenient forum for litigation as the city where the company is headquartered.

Finally, Plaintiff states that she wishes to avoid a transfer to Texas because "the Fifth Circuit is well known to be a more employer-friendly circuit when compared to the Ninth Circuit." (Doc. 37 at 10.) Plaintiff does not, however, identify any case law suggesting this sort of raw tactical consideration may be legitimately considered as part of the § 1404(a) transfer analysis.

The Court thus concludes that the convenience-to-parties factor tips slightly in favor of a transfer to Texas. *Cf. Aircraft Mechs.*, 2017 WL 1384296 at *2 ("Plaintiffs are entitled to deference for their choice in forum, but this factor weighs in favor of transfer.").

3. <u>Convenience of Witnesses/Location of Evidence</u>: American has submitted evidence showing that "[a]ll American employees who are potential witnesses—and whose testimony will be essential to resolving this litigation— are based in Fort Worth. Multiple employees in the Human Resources Division, Finance Division, Compensation Department, and Executive Compensation Department, which are headquartered in Fort Worth, are likely to have relevant information due to the nature of their positions and responsibilities, including Chris Ducey (Managing Director, Compensation and

Retirement), Patricia Herrera (Director, Executive Compensation), and Hazel Guideng (Manager, Compensation). Indeed, American's entire Executive Compensation team is based in Fort Worth. Any of these witnesses, who all work at American's headquarters in Fort Worth, would be inconvenienced by having to appear at trial in Arizona." (Doc. 34 at 9.) American further argues that most of the key documents in this case, including "any hard copy notes or records related to compensation policies," are likely "maintained by the Compensation Department in Fort Worth, a department with responsibility for administration of the policies." (Doc. 34 at 10-11.)

Plaintiff responds to these arguments by noting that American's initial discovery disclosures in this case didn't identify any Texas-based witnesses or Texas-based documents. (Doc. 37 at 2-4.) She thus argues that American's belated identification of those witnesses and documents, after her amended complaint was filed, should be regarded with suspicion. (Doc. 37 at 2-4.) Plaintiff further contends that, even if most of the documents are located in Texas, "advancements in electronic discovery and modern trends in litigation" have reduced the inconvenience associated with out-of-state document production. (Doc. 37 at 4, 13-15.)

The Court concludes this factor weighs in favor of a transfer to Texas. American's initial MIDP disclosures may not have identified any Texas-based witnesses, but the evidence that American submitted in support of its motion to transfer—a sworn declaration from its managing director of human resources (see Doc. 34-1)—establishes that the majority of the key witnesses in this case are based in Texas. Although Plaintiff has voiced concerns about how American's submissions on this topic have evolved over time, Plaintiff has not submitted any contrary evidence. Further, the Court is not persuaded by Plaintiff's argument that advances in discovery technology have rendered irrelevant the location of the key documents. *Hoefert*, 2018 WL 2740276, \*3 ("While Plaintiff argues that most of the exhibits or documents necessary to this case can be easily transmitted to the District of Arizona with minimal expense, the Court finds it will be less expensive to produce the relevant documents in the Northern District of Texas.").

4. State Most Familiar With Governing Law:

Under *Jones*, one factor that may be relevant in the § 1404(a) transfer analysis is which "state . . . is most familiar with the governing law." 211 F.3d at 498. In its motion, American argues this factor is neutral because "[n]either jurisdiction is more familiar with the facts or governing law of this case." (Doc. 34 at 6 n.3.) In her response, Plaintiff acknowledges that "both districts are sufficiently familiar with the governing law" but argues this factor still cuts against transfer because Ninth Circuit law concerning wage discrimination is more developed than Fifth Circuit law. (Doc. 37 at 8-9.) In its reply, American contends that Plaintiff's arguments on this point "smack[] of forum shopping, long deemed impermissible in the federal system." (Doc. 38 at 7.)

The familiarity-with-governing-law factor is meant to apply in cases involving state-law claims—it reflects a presumption that a federal court will know more about the substantive law of its home state (having derived this wisdom from handling diversity suits) than a federal court located in a different state. *Jensen v. Simon & Schuster, Inc.*, 2012 WL 6839713, *7 (D. Or. 2012) ("Section 1404(a) generally favors allowing diversity cases to proceed before a court that is familiar with the governing law."). Here, the amended complaint doesn't assert any state-law claims. Thus, the Court concludes this factor is neutral. *Cf. Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1133 (C.D. Cal. 2009) ("As plaintiffs' claims are primarily federal trademark and copyright claims, . . . the [which forum's law applies] factor carries little weight. Courts in this district and the Eastern District of Wisconsin are equally capable of applying federal law.").

5. Other Factors:

Plaintiff argues that Arizona's participation in the Mandatory Initial Discovery Pilot ("MIDP") program counsels against a transfer because the MIDP results in reduced litigation costs and the speedy resolution of cases. (Doc. 37 at 13.) In its reply, American asserts that Plaintiff's invocation of the MIDP is a "smokescreen of [an] irrelevant argument[]" that has "no place in the well-established transfer analysis." (Doc. 38 at 2-3, 5-6.)

The Court disagrees with American's contention that the MIDP is irrelevant. One factor that courts may consider under § 1404(a) is "the differences in the costs of litigation in the two forums." *Aircraft Mechs.*, 2017 WL 1384296 at *2. Here, Plaintiff has made a credible argument that Arizona's participation in the MIDP program may, in general, render it a less-costly litigation forum than the Northern District of Texas. However, as previously explained, American has shown that a majority of its witnesses (who likely constitute a considerable number of the witnesses who will be deposed or called to testify) and relevant documentary evidence are located in Texas, which directly affects the cost of litigation. *Gomez v. Wells Fargo Bank, NA*, 2009 WL 1936790, *3 (D. Ariz. 2009) (citation omitted) ("[L]itigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions [and] when the action is pursued near the location of documents likely to be at issue in the case.") Consequently, the Court finds that, despite the MIDP program, litigation is likely to be less expensive in the Northern District of Texas.

6. <u>Balancing</u>:

The location-of-events, convenience-to-parties, convenience-to-witnesses, and cost-of-litigation factors all suggest this matter should be transferred to the Northern District of Texas, while the familiarity-with-law factor is neutral. These considerations, on balance, lead the Court to conclude that American's motion to transfer should be granted.

\* \* \*

IT IS ORDERED that American's Motion to Transfer (Doc. 34) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court shall TRANSFER this case to the Northern District of Texas.

Dated this 24th day of January, 2019.

Dominic W. Lanza
United States District Judge